## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA

| | | |
|---|---|---|
| RICARDO HARO, | ) | |
| | ) | |
| Plaintiff, | ) | CIVIL ACTION FILE NO.: |
| | ) | |
| vs. | ) | |
| | ) | |
| RODNEY BRYANT, | ) | Jury Trial Demanded |
| | ) | |
| Defendant, | ) | |
| _____ | ) | |

### COMPLAINT

Plaintiff Ricardo Haro ("Haro"), by and through his undersigned counsel, states his Complaint for Defamation against Defendant Rodney Bryant, former Chief of Police of the City of Atlanta ("Chief Bryant"), in his individual capacity, as follows:

### INTRODUCTION

1.      This is a renewal action pursuant to O.C.G.A. § 9-2-61. Plaintiff Haro previously sued Chief Bryant and the City of Atlanta in this Court in October 2021, Case No. 1:21-cv-04478-JPB, for claims of First Amendment Retaliation and Defamation. At the time the original action was filed, Plaintiff Haro was a Georgia citizen.

1

2.      By its Order on Defendants' summary judgment motion and Judgment dated August 29, 2024, this Court dismissed the First Amendment claim on the merits and dismissed the state law defamation claim without prejudice for lack of subject matter jurisdiction. Shortly after filing suit in October 2021, however, Plaintiff Haro changed his domicile and citizenship from Georgia to Colorado, years prior to the dismissal of the original action, such that diversity jurisdiction now exists. All conditions precedent to this valid renewal action have been satisfied.

3.      In August 2020, Chief Bryant and the Atlanta Police Department formed a joint task force named Operation Phoenix to address the rise in violent crime in Atlanta during the COVID-19 pandemic.  According to the public statements of Chief Bryant and other members of the task force, the operation specifically targeted gang-affiliated violence, murders, and gun trafficking utilizing law enforcement intelligence to identify, investigate, and arrest them, and in doing so combat the spike in the rising violent crime and homicides in the City of Atlanta.

4.      In Chief Bryant's own words, Operation Phoenix "began on August 18, 2018, in an effort to identify, investigate, and prosecute those individuals *deemed the most dangerous to the citizens of this city*." Two months after the operation began, on October 29, 2020, Chief Bryant announced to the world that Operation Phoenix had identified and arrested twelve individuals "deemed … to be responsible

for some of the most violent crimes in the City of Atlanta," including, e.g., "guns, gang affiliations, [and] gun trafficking." Chief Bryant identified Haro as one of those twelve individuals "charged as a result of Operation Phoenix," and announced that as a result of Haro's and the other eleven's arrest, the murder and other violent crime rates began "to stave off" and "diminish," because those arrested "were having a significant impact on the crime that we were seeing inside the city."

5.      Haro was not arrested or charged as a result of Operation Phoenix. He is not a dangerous criminal nor one of the city's most dangerous criminals, nor was he in any manner responsible for the rise in murders, gun trafficking, or other violent crime during COVID. He was a 20-year-old with no history or affiliation with gangs, gun trafficking, murders, or any other violent crime. Haro was arrested for a curfew violation while engaged in protected First Amendment speech on June 4, 2020, *ten weeks before Operation Phoenix even existed*, during widespread protests against police brutality and the use of excessive force.  He was not arrested as a result of any intelligence or knowledge by law enforcement that he was one of the most dangerous criminals in the City of Atlanta they needed off the streets; it was a chance encounter during widespread protests against police brutality.

6.      Chief Bryant and the other law enforcement agencies involved in the defamation alleged herein knew unequivocally that Plaintiff Haro had no prior

violent criminal history arrest, and no gang affiliations. Indeed, in the run-up to the press conference, law enforcement (including Chief Bryant) exchanged in writing—on multiple occasions—the following information about Plaintiff Haro:

| Subject | Custody | Baseball Card | Op Phoenix Team | AUSA | Source | Gang Affiliation |
|---|---|---|---|---|---|---|
| Ricardo Haro | No | Completed | Team 4 | Pending | FBI | None Identified |

**(U) FBI DIVS/Sentinel Checks:**

- (U//FOUO) FBI database queries of Sentinel and DIVS produced zero results other than the Assault on a Federal Officer investigation.

| CRIMINAL HISTORY |
|---|

**(U) NCIC Checks:**

- (U//FOUO) NCIC queries produced zero results other than the Assault on a Federal Officer investigation.

7. Despite this, Chief Bryant branded Plaintiff Haro a violent gang member with a history of violent crime and one of the twelve most dangerous criminals in this city during a well-organized and attended press conference. On the record of this case, Chief Bryant did so maliciously with the knowledge that Haro had no criminal history that could justify the false and defamatory labels applied to him.

8. Haro recognizes the importance of law enforcement activities and joint task forces such as Operation Phoenix and commends the *arrests* of that task force

and significant resources that were apparently required to stem violent crime in the City of Atlanta.  He recognizes that holding press conferences to announce significant arrests may also be useful as, for example, a deterrent to future crime. However, law enforcement cannot be permitted to trample on the rights of a young man with the awesome power and credibility of the government in the manner that they have in this case, especially when they take no remedial action after being confronted by the victim of their conduct. Still, to this day, despite years of litigation and open acknowledgment that Plaintiff Haro should not have been included in the Operation Pheonix press statements, the law enforcement authorities who branded him one of the 12 most dangerous criminals in the City of Atlanta have done nothing to clear his name.

9.      Accordingly, this is an action for defamation against Chief Bryant for his knowing and malicious false accusations against Haro branding him a renowned violent criminal during an October 29, 2020, press conference and corresponding press release.

## PARTIES, JURISDICTION, AND VENUE

10.      Plaintiff Haro is a resident and citizen of the state of Colorado, residing in Denver, Colorado.

11.    Plaintiff Haro moved to Colorado by early 2022, shortly after his original action was filed. He has resided in Colorado at all times since; he maintains a Colorado driver's license; he files his taxes in Colorado; and he is employed in Colorado.

12.    Defendant Chief Bryant is the former Chief of Police of the Atlanta Police Department, a Georgia citizen, and resident of this District.  He is sued in his individual capacity.

13.    A substantial part of the events giving rise to Haro's claims occurred in this District, and Chief Bryant and the City of Atlanta perform(ed) their government functions in this District.

14.    There exists complete diversity of citizenship between Plaintiff Haro and Chief Bryant.

15.    The amount in controversy exceeds $75,000, exclusive of interest, costs, and attorneys' fees.

16.    Therefore, this Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1332(a)(1).

17.    Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(1)-(2) and 1391(c)(1).

## FACTUAL BACKGROUND

### Haro's Arrest in June 2020

18.     On June 4, 2020, Haro was arrested for a curfew violation during the then-ongoing protests.

19.     During Haro's arrest and while in handcuffs surrounded by several law enforcement officers, he was additionally charged with misdemeanor simple battery for allegedly spitting on a police officer.

20.     Also during Haro's arrest, an FBI officer can be heard stating in the presence of Atlanta Police Department officers as follows: "You get his shit we're gonna send it to the U.S. Attorney in August," as well as stating "Dude, I really wanted to fucking knock the fuck out of him" while laughing.

21.     As this Court noted in its Order on Defendants' summary judgment motion in the original action, the facts of this case are likely sufficient to causally link Plaintiff Haro's inclusion in the defamatory Operation Phoenix press statements to his alleged spitting on an FBI officer during his arrest by the Atlanta Police Department.

### Operation Phoenix Begins August 18, 2020

22.     *Ten weeks later*, on or around August 18, 2020, Chief Bryant and the Atlanta Police Department created a joint task force named "Operation Phoenix"

with the Federal Bureau of Investigation (FBI), the United States Attorney's Office for the Northern District of Georgia (USAO), and others, including the United States Drug Enforcement Administration (DEA), United States Department of Homeland Security, the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF), the United States Secret Service, and the Georgia Bureau of Investigation (GBI).

23.    On information and belief, including because Haro was subsequently identified as a target of Operation Phoenix, it is not a coincidence that law enforcement officers from the FBI and Atlanta Police Department—which agencies spearheaded Operation Phoenix—planned during a June 4, 2020, arrest to delay providing Haro's information to the USAO—the agency in charge of prosecuting those arrested from Operation Phoenix—until August.  That is when the joint task force began.

### The False and Defamatory October 29, 2020, Press Statements

24.    On October 29, 2020, Chief Bryant and the City of Atlanta co-hosted a well-attended press conference ("Press Conference") and contemporaneously co-published a press release ("Press Release").  The purpose of the Press Conference was to announce Operation Phoenix, its early results via arrests, and the dramatic effect those arrests had on reducing violent crime.

25.    The    Court    may    view    the    Press    Conference    at

https://www.youtube.com/watch?v=lELFHy8A0Tk (last visited January 20, 2025).

26.    The Court may view the Press Release at https://www.fbi.gov/contact-

us/field-offices/atlanta/news/press-releases/fbi-announces-results-of-operation-

phoenix (last visited January 20, 2025).  A true and correct copy of the Press Release

is also attached hereto as *Exhibit A*.

27.    The Press Release was headlined "FBI Announces Results of Operation

Phoenix" and states, in material part, as follows:

> FBI Special Agent in Charge Chris Hacker, *Interim Atlanta Police Chief Rodney Bryant*, and U.S. Attorney Byung J. "BJay" Pak announce that twelve of *Atlanta's most violent offenders are being charged as a result of Operation Phoenix*, a sustained and coordinated law enforcement initiative to fight *violent crime* in the City of Atlanta.
>
> Operation Phoenix *began on August 18, 2020* in an effort to identify, investigate, and prosecute those individuals *deemed the most dangerous to the citizens of this city*…..
>
> The following twelve subjects are only the first of hopefully many arrests as we will continue to work together for the benefit of the City of Atlanta and its citizens: …
>
> *Ricardo Haro*, 19, Simple Battery against a Police Officer (state charge)

(Emphasis added).

28.    Notably, the Press Release failed to mention that Haro's arrest was

initially for a curfew violation during Constitutionally protected protests, and failed

to give any context to his alleged simple battery, which did not involve any type of force, guns, or other weapons, but included only an alleged spitting incident.

29.    The Press Release was distributed to attendees at the Press Conference, and subsequently widely republished.

30.    Standing alone and without reference to its Press Conference counterpart, Chief Bryant conveyed in the Press Release the false and defamatory meaning that Haro was arrested as a result of Operation Phoenix because he is one of the most dangerous violent criminals in the City of Atlanta.

31.    The Press Conference spans approximately 25 minutes. FBI Special Agent in Charge Chris Hacker opens the Press Conference, followed by U.S. Attorney Pak, and Chief Bryant begins speaking at minute marker 9:50 and continues speaking and answering questions until minute marker 19:50.

32.    Special Agent in Charge Chris Hacker[1] stated, in material part, as follows:

---

[1] Although Haro believes these statements by SAC Hacker and those by U.S. Attorney Pak in a joint press conference may be appropriately attributed to Chief Bryant and the City of Atlanta, he does not allege them for that purpose. Instead, he alleges them to provide a more complete explanation of the context in which Chief Bryant made his false and defamatory accusations—an analysis required to assess the defamatory meaning of Chief Bryant's own words—and because their own words demonstrate the unequivocal falsehoods that a June 2020 curfew violation was part of a task force that began in August 2020 and that Haro was in any manner

     a.    "In mid-August, the leaders who stand here today met with Chief Bryant to develop a comprehensive strategy to address the rise in *violent crime* here in the city."

     b.    "In ten short weeks, *after we started* Operation Phoenix, we identified about a dozen individuals who we believe to be some of the *most significant violent offenders in the city*.  We jointly investigated those individuals, and brought the results to Mr. Pak, whose office brought federal charges against many of these individuals."

     c.    "We believe this initiative will slow the violence and we also believe it should serve as a strong deterrent for … any violent crime activities. The bottom line is there's gonna be consequences for committing violent crime in Atlanta."

     d.    "I would anticipate … that this team will continue to work together and we're gonna identify the most violent criminal offenders and we're gonna bring those cases to the United States Attorney's Office to seek federal prosecution."

     e.    "I think it's safe to say from an intelligence standpoint we were aware of some of their [the individuals identified, including Haro] behavior and we shared some of that intelligence with the police department in order to come up with this group …"

(Emphasis added).

33.    U.S. Attorney Pak stated, in material part, as follows:

     a.    "We were having a positive trend [against violent crime] until the COVID situation … and in turn by leaving a vacuum, so there is really no surprise when the city's *murder rate significantly exceeded the previous years and the violent crime rates are increasing*."

---

targeted and investigated due to some law enforcement intelligence regarding his falsely alleged violent criminal actions.

      b.    "… I know that the men and women of law enforcement, especially the Atlanta Police Department, are dedicated to upholding the rule of law. And to protect this city…. I'm proud to support the Atlanta Police Department … and recommitting and reinforcing all of their efforts to combat *violent crime* that is creeping up in this city."

(Emphasis added).

34.    During the Press Conference, Chief Bryant made the following false and defamatory accusations of and concerning Haro:

      a.    "How did we get here?  We began to see crime start to increase in May of this year. Which coincided with the opening of the city as it relates to people suffering from the stress of COVID-19. And as those numbers began to spike, as we entered upon civil unrest, we saw *the greatest numbers of homicides in our city*. We had more homicides in the month of July than we had in most previous years."

      b.    "As they brought me down to give me some ideas of what we were seeing as it relates to violent crime, they showed me *a network of individuals that they believed were truly committed to continuing violence and through that they were having a significant impact on the crime that we were seeing inside the city*."

      c.    "And so immediately after we developed the operation, Operation Phoenix, the numbers [of violent crimes] started to stave off, as we started to make arrests of some of these individuals.  There's no specific area in this City of Atlanta that these individuals did not touch.  There was no specific crime other than their violence that they did not touch.  There was no level of crime that they did not have an impact on.  This included *gang affiliation, drug sales, and violent crimes alike*."

      d.    "What we have begun to see and what we, uh, as those numbers, those types of *violent crimes*, have started to diminish…"

e.    "One of the things is we recognize that bringing in partners, again, it gave us resources that we just didn't have and it allowed us to be able to get violent offenders off of the streets much quicker …"

f.    "*These individuals were repeat violent offenders. There was some nexus with them and violence, and we deemed them to be responsible for some of the most violent crimes in the City of Atlanta.  This included guns, gang affiliations, gun trafficking, and so on.*"

g.    "*What we recognize is that these individuals had some type of partnership or nexus to each other, so they may be two different gangs fighting with each other, or hanging out in the same area, but there was always some level of connectivity from one individual to the next.  Not necessarily in partnership, but some level, either they got into it with each other, or they were fighting over the same territory, things of that nature … [the common denominator] being violence.*"[2]

h.    "*That's correct [that all listed individuals are violent criminals].*"

i.    "The individuals *we targeted*, these individuals were out on the street, so that's how we were able to address them because they were *out on the street committing a level of violence … we will not tolerate that level of violence in our city*."

(Emphasis added).   The above statements by Chief Bryant, together with the statements of the Press Release expressly alleged herein, are hereinafter referred to as the "False and Defamatory Accusations."

35.    Through the False and Defamatory Accusations, Chief Bryant conveyed the false and defamatory meaning that Haro was targeted by and arrested

---

[2] Brackets indicate the context of the questions posed by the media and being answered by Chief Bryant.

as a result of Operation Phoenix because he was one of a "network" of gang affiliated individuals who are "repeat violent criminals" "responsible for some of the most violent crimes in the City of Atlanta includ[ing]" murder, gun violence, gun trafficking, and drug sales, and that it was Haro's arrest that led to a prompt decrease in all level of crime across the City of Atlanta.

36.    As more fully detailed herein, Haro is none of the things Chief Bryant described, he was not targeted or arrested as part of Operation Phoenix, and he committed none of the crimes alleged by Chief Bryant.  He was arrested for an alleged curfew violation and allegedly spitting on an officer once following a chance encounter with police long before Operation Phoenix was apparently formed.

37.    The several hours of body cam footage of Haro's arrest demonstrates that precisely zero of the law enforcement officers present and involved were in any manner threatened by Haro, who was handcuffed the entire time with a bag over his head for much of the encounter while surrounded by numerous officers.

38.    Instead, they derisively laughed at him, poured water on him, called him "crazy," had him sedated to send him to the hospital by a medic who inquired about his mental health status, discussed in detail how they can best "throw the book at him" (colloquially speaking), and one stated that he "really wanted to fucking knock the fuck out of him" while laughing.

14

39.    It was neither an accident nor a coincidence that Haro was ultimately identified by Chief Bryant (and others) on October 29, 2020, when they publicly announced that he was arrested as a result of Operation Phoenix and branded him one of the most violent criminals in the City of Atlanta.

40.    Haro was not only categorically not part of any investigation related to Operation Phoenix (excepting his retaliatory inclusion in the belatedly formed operation), but law enforcement had no information whatsoever that Haro had otherwise engaged in the violent crimes described in the False and Defamatory Accusations, because he had not.

41.    Instead, Haro's only actions which could have placed him on Chief Bryant, the City of Atlanta's, and the FBI's radar were protesting police misconduct under curfew and allegedly spitting on a law enforcement officer one time during his multi-hour arrest.

42.    Under the circumstances, the False and Defamatory Accusations against Haro appear calculated, premeditated, and motivated by Haro's conduct on June 4, 2020.

**Demand for Retraction**

43.    On September 17, 2021, Haro delivered to Chief Bryant and the City of Atlanta via the Atlanta Police Department a demand for retraction and correction of the False and Defamatory Accusations.

44.    After follow up attempts by Haro's counsel, the City of Atlanta's Department of Law acknowledged receipt of the demand for retraction no later than October 2, 2021.

45.    Neither Chief Bryant nor the City of Atlanta issued any kind of retraction or correction for the False and Defamatory Accusations—nor even engaged in a substantive discussion—despite the undisputed truth that Haro had no involvement whatsoever with the crimes described in the Press Release and Press Conference nor was he targeted by Operation Phoenix.

## CAUSE OF ACTION FOR DEFAMATION

46.    Haro incorporates by reference paragraphs 1 through 45 of this Complaint as though set forth herein in their entirety.

47.    Chief Bryant published to the world via the Press Conference and Press Release the False and Defamatory Accusations.

48.    In the full context in which they were uttered, the False and Defamatory Accusations conveyed the false and defamatory meaning that Haro was targeted and

arrested as a result of Operation Phoenix because he was one of the most dangerous criminals in the City of Atlanta by virtue of him having committed gang-related murder, gun violence, gun trafficking, and other dangerous violent crimes.

49.    The False and Defamatory Accusations are each of and concerning Haro, including because Haro's name was included in the Press Release and, upon information and belief based upon media publications, his photograph was also provided to attendees of the Press Conference.

50.    Chief Bryant published each of the False and Defamatory Accusations without privilege.

51.    Chief Bryant published each of the False and Defamatory Accusations with actual malice, in that he knew or recklessly disregarded that Haro was not part of Operation Phoenix, was not a dangerous violent criminal, had no gang affiliations, and had not otherwise committed any of the dangerous violent crimes Chief Bryant described in the False and Defamatory Accusations.

52.    On multiple occasions in the weeks prior to making the False and Defamatory Accusations, Chief Bryant received written reports specifically stating that Plaintiff Haro had no gang affiliations and no known prior criminal history.

53.    On multiple occasions in the weeks prior to making the False and Defamatory Accusations, Chief Bryant participated in conferences with, among

others, the FBI and APD in which those written reports were discussed and the individuals to be included in the Press Conference and Press Release were identified.

54.    Chief Bryant knew that Haro was not part of Operation Phoenix, if for no other reason, because he was arrested approximately ten weeks before Operation Phoenix began.

55.    Chief Bryant knew that Haro was not part of Operation Phoenix, if for no other reason, because Haro was arrested for an alleged curfew violation and spitting on a police officer, not for murder, gun trafficking, drug sales, or any other crime identified in the False and Defamatory Accusations.

56.    Chief Bryant knew that Haro was not part of Operation Phoenix, if for no other reason, because Haro had no criminal history revealing any of the violent crimes identified in the False and Defamatory Accusations.

57.    Chief Bryant knew that Haro was not part of Operation Phoenix, if for no other reason, because Haro has no gang affiliations whatsoever.

58.    Chief Bryant published the False and Defamatory Accusations with the knowledge that doing so would harm Haro.

59.    Based upon the comments of law enforcement officers on June 4, 2020, that they intended to hold Haro's information until August 2020—the month when Operation Phoenix was formally created—Chief Bryant published the False and

Defamatory Accusations with the awareness that he was doing so for an illegitimate, retaliatory purpose that would unduly and unlawfully harm Haro.

60.    Based upon the totality of the circumstances, Chief Bryant published the False and Defamatory Accusations with that type of willfulness and/or malice that defeats any applicable qualified privilege or immunity, including because it was apparent that Haro was not part of Operation Phoenix, had not committed the crimes targeted by Operation Phoenix, had not committed the crimes described in the False and Defamatory Accusations, and because publishing those false accusations would unlawfully and unduly harm Haro.

61.    Despite being confronted with the falsity of his accusations, Chief Bryant has taken no action to correct the public record he created.

62.    Based upon the totality of the circumstances, Chief Bryant published the False and Defamatory Accusations with common law malice, for a retaliatory purpose, and with the knowledge and intent to commit a wrong.

63.    The False and Defamatory Accusations are defamatory per se, in that they accuse Haro of committing various violent crimes.

64.    Because the False and Defamatory Accusations are defamatory per se, damages to Haro are presumed as a matter of law.

65.     The False and Defamatory Accusations proximately caused to Haro significant actual reputational, emotional, and mental damages.

66.     Chief Bryant knew, intended, and foresaw that his False and Defamatory Accusations would be widely republished, including because the Press Conference and Press Release were specifically designed to obtain media coverage.

67.     Accordingly, Chief Bryant is liable for all damages suffered by Haro as a result of such intended and/or foreseeable republications of the False and Defamatory Accusations.

68.     As a result of the evidence of Chief Bryant's malicious intent to harm, Haro is entitled to an award of punitive damages to punish and deter Chief Bryant for his unlawful conduct and to deter him from repeating such misconduct in the future.

69.     Chief Bryant's actions were further taken in bad faith and he has otherwise been stubbornly litigious, and Haro is therefore entitled to an award of his reasonable attorney's fees and costs.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff Ricardo Haro respectfully petitions this Honorable Court for the following relief:

a) That Summons and Process issue as provided by law;

b) That Haro be granted a trial before a jury of his peers;

c) That Haro be granted judgment and all appropriate damages, including compensatory damages in excess of $75,000.00, against Defendant;

d) That Haro be granted an award of attorneys' fees and costs pursuant to O.C.G.A. § 13-6-11, in an amount to be proven at trial;

e) That Haro be granted an award of punitive damages in an amount to be proven at trial; and

f) For such other and further relief as the Court may deem just and proper.

Respectfully submitted this 21st day of January, 2025.

**WADE, GRUNBERG & WILSON, LLC**

/s/ G. Taylor Wilson
Nicole Jennings Wade
Georgia Bar No. 390922
nwade@wgwlawfirm.com
Jonathan D. Grunberg
Georgia Bar No. 869318
jgrunberg@wgwlawfirm.com
G. Taylor Wilson
Georgia Bar No. 460781
twilson@wgwlawfirm.com

729 Piedmont Ave. NE
Atlanta, Georgia 30308
404-600-1153
470-970-4303 (fax)

*Counsel for Plaintiff Ricardo Haro*

21

## <u>CERTIFICATION UNDER L.R. 7.1D.</u>

Pursuant to Northern District of Georgia Civil Local Rule 7.1D, the

undersigned counsel certifies that this COMPLAINT is a computer document and

was prepared in Times New Roman 14 point font, as mandated in Local Rule 5.1C.

This 21st day of January, 2025.

<u>/s/ G. Taylor Wilson</u>
G. Taylor Wilson
