UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| RICARDO HARO,<br><br>    Plaintiff,<br><br>v.<br><br>RODNEY BRYANT,<br><br>    Defendant. | CIVIL ACTION NO.<br>1:25-CV-00257-JPB |

# **ORDER**

This matter is before the Court on Rodney Bryant's ("Defendant") Motion to Dismiss [Doc. 6]. This Court finds as follows:

## **PROCEDURAL HISTORY**

This is a renewal action. Ricardo Haro ("Plaintiff") originally filed suit against Defendant and the City of Atlanta on October 28, 2021, asserting two causes of action: (1) retaliation in violation of the First Amendment; and (2) defamation. See Haro v. Bryant, Case No. 1:21-cv-04478-JPB (hereinafter, Haro I). In that action, Plaintiff alleged that the defendants retaliated against him for protesting police brutality when they identified him in a press release and press conference as a violent criminal and one of the most dangerous persons in Atlanta. [Haro I, Doc. 1] On August 29, 2024, the Court issued a summary judgment order

in favor of the defendants as to Plaintiff's retaliation claim. [Haro I, Doc. 78]. As to the defamation claim, the Court declined to exercise its supplemental jurisdiction and dismissed the claim without prejudice. Id.

On January 21, 2025, Plaintiff refiled this action against Defendant pursuant to Georgia's renewal statute.[1] [Doc. 1]. On March 24, 2025, Defendant filed the instant Motion to Dismiss. [Doc. 6]. Before reaching the merits of Defendant's motion, however, the Court must address Defendant's argument that the Court should consider certain facts from the Haro I summary judgment order under the collateral estoppel doctrine.

Collateral estoppel, which is also known as issue preclusion, "forecloses relitigation of an issue of fact or law that has been litigated and decided in a prior suit." CSX Transp., Inc. v. Bhd. of Maint. of Way Emps., 327 F.3d 1309, 1317 (11th Cir. 2003) (citation modified). The following elements must be established for collateral estoppel to apply: (1) "the issue at stake must be identical to the one decided in the prior litigation;" (2) "the issue must have been actually litigated in the prior proceeding;" (3) "the prior determination of the issue must have been a critical and necessary part of the judgment in that earlier decision;" and (4) "the

---

[1] Ordinarily, when a court declines to exercise supplemental jurisdiction over a state claim, the action is refiled in the appropriate state court. Plaintiff, however, refiled in this Court because he is now a resident of a different state.

standard of proof in the prior action must have been at least as stringent as the standard of proof in the later case." In re Se. Banking Corp., 69 F.3d 1539, 1552 (11th Cir. 1995). Although Defendant bears the burden of showing that collateral estoppel applies, Defendant simply argues in his briefing that "all four elements are satisfied." [Doc. 6, p. 9].

In this case, Defendant is attempting to assert issue preclusion against Plaintiff regarding certain factual findings contained in the summary judgment order from Haro I. Specifically, the findings concern (1) who issued the press release and (2) what was said at the press conference. The statements made in the press release and press conference form the basis of Plaintiff's defamation claim.

This Court finds that collateral estoppel does not apply in this case. At the very least, Defendant has not satisfied the third element, which requires him to show that the prior determination of the issue (here, the facts surrounding the press release and press conference) was a critical and necessary part of the judgment in the earlier decision. In Haro I, the Court only analyzed the retaliation claim—not the defamation claim—in its summary judgment order. Importantly, the Court determined that judgment against Plaintiff was proper as to the retaliation claim because Plaintiff failed to show that Defendant knew that Plaintiff engaged in protected First Amendment activities. See [Haro I, Doc. 78, p. 13] (finding that

3

"the record lacks any evidence showing that Plaintiff's First Amendment activities—specifically his speech in protest of police brutality and the use of excessive force—were the reason for his inclusion in the . . press statements.").[2] Who issued the press release and what was said at the press conference was completely irrelevant to the dispositive issue of whether Defendant had knowledge of Plaintiff's First Amendment activities.  Accordingly, any findings of fact surrounding the press release and press conference were not a critical and necessary part of this Court's judgment in the previous action, and therefore Defendant cannot claim the benefit of collateral estoppel.  The facts stated below are thus limited to those asserted in Plaintiff's Complaint.

## FACTS

On June 4, 2020, Plaintiff was allegedly protesting police brutality and the use of excessive force when the Atlanta Police Department ("APD") arrested him for a curfew violation.  [Doc. 1, pp. 3, 7].  During the arrest, Plaintiff spit on a Federal Bureau of Investigation ("FBI") officer, and as a result, he was additionally charged with battery on a police officer.  Id. at 7.

---

[2] Notwithstanding this finding, the Court noted that the record likely contained sufficient evidence to raise a material dispute as to whether Plaintiff's inclusion in the press statements was causally linked to his spitting on an officer during his arrest.  [Haro I, Doc. 78, p. 14 n.2]

4

Approximately ten weeks later, in August 2020, Defendant—the former chief of the APD—created a joint task force with the FBI, the United States Attorney's Office for the Northern District of Georgia and others named "Operation Phoenix." Id. at 7–8. Operation Phoenix was established to address the rise in violent crime in Atlanta during the COVID-19 pandemic. Id. at 2.

On October 29, 2020, Defendant and the City of Atlanta co-hosted a press conference and contemporaneously co-published a press release to announce Operation Phoenix, identify its early results and arrests and explain the dramatic effect those arrests had on reducing violence crime. Id. at 8. The press release, which was distributed to those at the press conference and widely republished, was headlined, "FBI Announces Results of Operation Phoenix." Id. at 9. The press release stated, in material part, as follows:

> FBI Special Agent in Charge Chris Hacker, Interim Atlanta Police Chief Rodney Bryant, and U.S. Attorney Byung J. "Bjay" Pak announce that twelve of Atlanta's most violent offenders are being charged as a result of Operation Phoenix, a sustained and coordinated law enforcement initiative to fight violent crime in the City of Atlanta.

Id. The press release went on to state that:

> Operation Phoenix began on August 18, 2020 in an effort to identify, investigate, and prosecute those individuals deemed the most dangerous to the citizens of this city. Federal law enforcement agencies worked in conjunction with local and state law enforcement officials to identify offenders.

5

Id.  Notably, the press release identified Plaintiff as one of the twelve violent individuals arrested as part of Operation Phoenix.  Id.  Plaintiff's photo was also included in the press release.  Id. at 17.

Defendant, along with representatives from the other agencies involved in Operation Phoenix, spoke at the press conference, which lasted approximately twenty-five minutes.  Id. at 10.  Defendant explained at the press conference that those arrested in conjunction with Operation Phoenix "were repeat violent offenders."  Id. at 13.  Defendant further noted, among other things, that "[t]here was some nexus with them and violence, and we deemed them to be responsible for some of the most violent crimes in the City of Atlanta.  This included guns, gang affiliations, gun trafficking, and so on."  Id.

Plaintiff contends that he is neither a violent criminal nor associated with any gang.  Consequently, Plaintiff asserts that Defendant defamed him by implying in the press release and press conference that he is one of the most dangerous violent criminals in Atlanta.

## LEGAL STANDARD

In evaluating a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the court "accept[s] the allegations in the complaint as true and constru[es] them in the light most favorable to the plaintiff."  Traylor v. P'ship

Title Co., 491 F. App'x 988, 989 (11th Cir. 2012). Federal Rule of Civil Procedure 8(a)(2) provides that a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Although detailed factual allegations are not necessarily required, the pleading must contain more than "labels and conclusions" or a "formulaic recitation of the elements of a cause of action." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). A complaint is insufficient if it only tenders naked assertions devoid of further factual enhancement. Id. Importantly, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Id. (citation omitted). At bottom, the complaint must contain more than "an unadorned, the-defendant-unlawfully-harmed-me accusation," id., and must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Traylor, 491 F. App'x at 990 (quoting Iqbal, 556 U.S. at 678). While all well-pleaded facts must be accepted as true and construed in the light most favorable to the plaintiff, a court need not accept as true the plaintiff's legal conclusions, including those couched as factual allegations. Iqbal, 556 U.S. at 678.

**DISCUSSION**

Defendant asserts that this action must be dismissed because the Court lacks subject matter jurisdiction. Defendant also contends that dismissal is required because he is entitled to official immunity and his statements are conditionally privileged. The Court addresses each argument below.

**I.      Subject Matter Jurisdiction**

Defendant argues that this matter should be dismissed for lack of subject matter jurisdiction. Plaintiff, on the other hand, asserts that jurisdiction is proper under 28 U.S.C. § 1332(a)(1), which provides that "[t]he district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States."

The United States Supreme Court has held that "[i]t has long been the case that the jurisdiction of the court depends upon the state of things at the time of the action brought." Grupo v. Dataflux v. Atlas Glob. Grp., 541 U.S. 567, 570 (2004) (citation modified). This rule is called "the time-of-filing rule."[3]  Id.  Here,

---

[3] In Grupo, the parties were not diverse when the action was filed. 541 U.S. at 569. At the time the jury rendered its verdict, however, the parties were diverse. Id. In determining that the lower court lacked jurisdiction, the Supreme Court emphasized that the relevant time for determining subject matter jurisdiction is the time when the action is filed. In expressing her disapproval of the Court's conclusion that the lower court lacked

8

Defendant does not dispute that the parties are currently diverse and were diverse when the instant action was filed. In fact, it is uncontroverted that Plaintiff is a citizen of Colorado, and Defendant is a citizen of Georgia. Defendant nevertheless claims that, when a case is renewed, the relevant date for determining subject matter jurisdiction is the filing date of the first action. At that time, all parties were Georgia citizens.

> Georgia's renewal statute provides that
>
>> [w]hen any case has been commenced in either a state or federal court within the applicable statute of limitations . . . , it may be recommenced in a court of this state or in federal court either within the original applicable period of limitations or within six months after the discontinuance or dismissal.
>
> O.C.G.A. § 9-2-61. Defendant asserts that the relevant time of filing is the first action because "[i]n the case of a renewed action—where a case has been dismissed without prejudice and re-filed within six (6) months of dismissal—the renewed action is deemed to have 'commenced' on the date the original complaint was filed." [Doc. 6, pp. 6–7].

---

jurisdiction, Justice Ginsberg explained in her dissent that the Court's rule resulted in needless inefficiencies "given the October 2000 jury verdict of $750,000 and the unquestioned current existence of complete diversity." Id. at 595 (Ginsburg, J., dissenting). Justice Ginsberg noted that "[the plaintiff] can be expected 'simply [to] refile in the District Court' and rerun the proceedings." Id.

This Court readily acknowledges that for statute of limitations purposes, an action is deemed commenced when the original complaint is filed.  "By its plain language," however, O.C.G.A. § 9-2-61 "merely tolls the statute of limitation." SunTrust Bank v. Lilliston, 809 S.E.2d 819, 822 (Ga. 2018).  In the Court's view, the renewal statute does not extend beyond the statute of limitations or address when jurisdiction is determined.  Indeed, a "renewed suit" is a "new case, not a continuance of the dismissed case." Cook-Rose v. Waffle House, Inc., 910 S.E.2d 562, 564 (Ga. 2024).  Accordingly, this Court finds that jurisdiction in this case hinges on the status of the parties when this instant action was filed.  Because the parties were completely diverse when this action was filed, the Court has jurisdiction pursuant to 28 U.S.C. § 1332(a)(1).[4]  Thus, to the extent that Defendant seeks dismissal based on lack of jurisdiction, the motion is **DENIED**.

II. **Official Immunity**

Defendant asserts that the Court should dismiss this action because he is entitled to official immunity.  Official immunity applies to claims brought against public officers and employees in their individual capacities. Mommies Props., LLC v. Semanson, 880 S.E.2d 376, 383 (Ga. Ct. App. 2022).  Under this type of

---

[4] No dispute exists as to the amount in controversy.  In this case, Plaintiff seeks more than $75,000.

immunity, an official "may not be held liable for injuries caused through his performance of discretionary functions unless he acts with actual malice or with actual intent to cause injury."  Bailey v. Wheeler, 843 F.3d 473, 485 (11th Cir. 2016).  Actual malice means a deliberate intention to do a wrongful act or do harm.  Cunningham v. Cobb County, 141 F.4th 1201, 1212 (11th Cir. 2025).  Actual malice does not include "the reckless disregard for the rights or safety of others."  Bailey, 843 F.3d at 485.  Moreover, "the phrase actual intent to cause injury means an actual intent to cause harm to the plaintiff, not merely an intent to do the act purportedly resulting in the claimed injury."  West v. Davis, 767 F.3d 1063, 1073 (11th Cir. 2014) (citation modified).

Defendant argues that Plaintiff cannot show actual malice because he "simply recited information provided to him from the [FBI] and his team."[5]  [Doc. 6, p. 15].  In the Court's view, Defendant's argument misconstrues and ignores some of Plaintiff's allegations.  Critically, Plaintiff alleged that Defendant "knew

---

[5] Defendant raised additional arguments in his reply brief.  [Doc. 10, pp. 13–14].  For instance, Defendant argued that the press conference statements did not convey false information about Plaintiff because he never specifically mentioned Plaintiff's name.  As to the press release, Defendant asserted that it truthfully identified Plaintiff as a 19-year-old who was charged with simple battery against a police officer.  Because these arguments were raised for the first time in the reply brief, the Court will not consider them.

unequivocally" that Plaintiff "had no prior violent criminal history arrest, and no gang affiliation," yet conveyed contrary information anyway. [Doc. 1, p. 4]. To show this knowledge, Plaintiff asserted that in the run-up to the press conference, law enforcement (including Defendant) exchanged in writing—on multiple occasions— the following information about Plaintiff:

| Subject | Custody | Baseball Card | Op Phoenix Team | AUSA | Source | Gang Affiliation |
|---|---|---|---|---|---|---|
| Ricardo Haro | No | Completed | Team 4 | Pending | FBI | None Identified |

(U) FBI DIVS/Sentinel Checks:
- (U//FOUO) FBI database queries of Sentinel and DIVS produced zero results other than the Assault on a Federal Officer investigation.

**CRIMINAL HISTORY**

(U) NCIC Checks:
- (U//FOUO) NCIC queries produced zero results other than the Assault on a Federal Officer investigation.

Id. According to Plaintiff, this information shows that Defendant knew that Plaintiff was not a gang member or a repeat violent offender. Plaintiff further alleged that Defendant made the statements in retaliation for his conduct during his June 2020 arrest.

This Court finds that Plaintiff's allegations are sufficient to plead actual malice because they plausibly show that Defendant knew his statements were false at the time they were made and were made in retaliation for Plaintiff's behavior during his arrest. Indeed, Plaintiff alleged that Defendant possessed firsthand

knowledge that Plaintiff was not a gang member or a repeat violent offender and nonetheless published information suggesting that Plaintiff was in a gang and responsible for a significant amount of violent crime. Plaintiff's allegations thus support a reasonable inference that Defendant acted with knowledge of falsity and ill will, rather than mere negligence or reckless disregard of the truth. The allegations also suggest that Defendant made the statements because of Plaintiff's conduct during his June arrest. Because Plaintiff's allegations are sufficient to demonstrate a deliberate intention to do wrong, Defendant's motion is **DENIED** to the extent that Defendant argues that dismissal is required based on official immunity.

### III. Conditional Privilege

Defendant asserts that dismissal is required because the statements at the press conference were conditionally privileged under O.C.G.A. § 51-5-7.[6] Specifically, Defendant argues that the statements were conditionally privileged because they were (1) made in good faith in the performance of a public duty and (2) truthful reports of information received from an arresting officer or police authorities.

---

[6] Defendant does not seem to make any argument about the statements contained in the press release.

Georgia law recognizes two different kinds of privileged communications: absolute and conditional. Wertz v. Allen, 721 S.E.2d 122, 126 (Ga. Ct. App. 2011). While communications that are absolutely privileged cannot form the basis of a defamation action, communications that are conditionally privileged are actionable upon a showing of malice. Id. Defendant contends that the Court should grant his Motion to Dismiss because "Plaintiff can never establish malice under the circumstances." [Doc. 6, p. 17]. For the reasons explained in the previous section, the Court is satisfied that Plaintiff has sufficiently alleged malice. As such, to the extent that Defendant argues that conditional privilege bars the defamation claim in this case, the motion is **DENIED**.

## CONCLUSION

For the reasons stated above, Defendant's Motion to Dismiss Plaintiff's Renewed Complaint [Doc. 6] is **DENIED**. The parties are **DIRECTED** to submit their Joint Preliminary Report and Discovery Plan no later than fourteen days from the date of this order.

**SO ORDERED** this 2nd day of January, 2026.

_____
J. P. BOULEE
United States District Judge